#### IN

## THE SUPREME COURT

#### OF

## THE STATE OF LOUISIANA.

———◆———

EASTERN DISTRICT, APRIL TERM, 1826.

———◆———

*MARTINEZ* vs. *LAYTON & CO.*

APPEAL from the parish court of the parish and city of New-Orleans.

After insolvency, the syndics may sue for any property, the alienation of which was null and void as to creditors;

But when the object of the action is to enforce a lien, which one of the creditors may have on immoveables alienated before failure, they cannot.

PORTER, J., delivered the opinion of the court. The first question which this case presents, is whether after the failure of the debtor, a mortgagee creditor can exercise his action of mortgage against property, which is in the hands of a third possessor; or whether it should not be prosecuted by the syndics of the insolvent.

We think the action is properly maintainable by the individual creditor. The property,

having passed out of the debtor before the cession, did not make a part of his estate. The syndics have, therefore, no authority to intervene, on the ground that they have a right to sue and get it into possession, as the property of the bankrupt. They could not support the action on the principle that it was a debt due to the estate, for there is nothing due by the third possessor to it. If the suit was to bring back into the common mass, the land on which the mortgage existed, because the alienation was fraudulent, or from any other reason which made it null and void as to creditors, the syndics would be the proper plaintiffs for such purpose. But for the objects sought to be attained by this suit, we cannot imagine any legal ground on which they could sue. The right asserted, belongs exclusively to the creditor who has brought the action against the third person, who is not the debtor of the insolvent. The circumstance of the creditor having the power, if he had chosen, to present his claims in the *concurso*, does not authorise the syndics to interfere with, and control the exercise of rights which he has deemed proper to enforce against third parties; no more than if the vendee of the

East'n. District.
*April*, 1826.

MARTINEZ
*vs.*
LAYTON & Co.

When a judgment is the basis of the mortgage, that judgment may be given in evidence against a third possessor.

A mortgage cannot be enforced on property, which previous to the date of recording had been sold by act *sous seing privé* and delivered.

insolvent was suing to recover possession from a third person, of the object purchased.

The second question, whether the judgment rendered against the debtor could be given in evidence against the third possessor, is of very easy solution. The answer is furnished by an express provision of our code, which declares, that " the seizure of the mortgaged property shall be ordered by a judgment, on the producing of a copy, in due form, *of the act of mortgage*, as well as of the judgment obtained against the principal debtor." When a judgment in the first instance is the basis of the mortgage, as was the case here, *it is the act of mortgage*, and consequently was legally admitted in evidence. To sustain the objection, would be tantamount to declaring, that judicial mortgages could not be enforced on property which had passed into the hands of third parties. *Civil Code*, 462, *art.* 43.

The third, and by far the most important question in the cause remains: it is, whether a mortgage which has been duly recorded, can be enforced on property, which, previous to the date of recording, had been sold by act *sous seing privé*, and was in the possession of

the vendee at the time the mortgage was registered.

In the case of *Doubrere* vs. *Syndics of Grillier*, it was decided, that the chirographic creditors of an insolvent could not set aside a *sous seing privé* act of their debtor; that they did not possess such a right before failure, and that their rights were not increased by that event. In the opinion delivered in that case, which received our most serious attention, many of the topics that necessarily belong to this, were considered, and a good deal of the reasoning used there, has a strong application to the instance now before us. *Vol.* 2, 171.

Still, the point there adjudged, is not the same as that which is necessary to the decision of this cause; and the express reservation which we made of such a case as that presented at this moment to the court, shows, that we then considered a decision on the rights of creditors, who had neither privilege or mortgage on the real estate of their debtor, would not be decisive as to those, who with such advantages should hereafter contest the effect of an act under private signature.

According to our code, "The mortgage is

East'n. District.
*April*, 1826.

MARTINEZ
*vs.*
LAYTON & Co.

a contract by which a person affects the whole, or only some part of *his property*, in favor of another.  *Civil Code*, 452, *art*. 1.

Another provision of the same work declares, that sales of immoveable property may be made by authentic act, or under private signature.  *Civil Code*, 344, *art*. 2.

Now, where there is a sale by *sous seing privé* followed by delivery previous to the date of the mortgage, the thing sold has ceased to be the property of the mortgagor, and it is as we have already seen, only *his property* that can be affected by it.

If these were the only provisions of our law on the subject, the case would be one of the greatest clearness, and the decision which we should necessarily give on it, would be conformable to the principles of our ancient jurisprudence ; according to which, a sale followed by delivery gave a complete right to the thing, and neither alienation nor mortgage subsequent to such sale and delivery, could affect the thing in the hands of the first purchaser.  This principle came from Rome, where as it is well known, the maxim was, *traditionibus.......dominia rerum, non nudis pactis transferentur.  Partida* 5, *tit*. 5, *c*. 20 ; *Febrero*

*p.* 1, *cap*, 7, §1, *no.* 21 ; *Gomez Var. lib.* 2, *cap.*
2, *no.* 20 ; *Code Liv.* 2, *tit.* 3, *l.* 20.

But the change which has taken place in the condition and affairs of society from the vast extension of commerce, and the great use of credit in modern times, has induced several of the modern nations of Europe to introduce a new and much more complex doctrine in relation to the alienation of immoveable property ; and cases are contemplated, where, though the sale is declared perfect between vendor and vendee, and the thing actually belongs to the latter, it yet remains the property of the seller, so far as third parties, possessing particular rights, are concerned. We have adopted this principle in our legislation.

The counsel for the mortgagee creditor has referred to the *Code, page* 344, *art.* 2, which treats of the effect of a sale under private signature. Before examining it, and it will be found very material in the decision of the case, it is necessary to recur to other provisions of our law in relation to acts *sous seing privé.*

The 224th article of the *Civil Code, p.* 306, is taken *verbatim* from that of the *Napoleon;* it is in these words :

MARTINEZ
*vs.*
LAXTON & Co.

" An act under private signature, acknowledged by the party against whom it is adduced, or legally held to be acknowledged, has between those who have subscribed it, their heirs and assigns, (*ayans cause*) the same credit as an authentic act."

The 228th article of the same page declares " that sales of immoveables and slaves, *sous seing privé*, shall have effect against third persons only from the time of their being registered, but that the want or delay of registering cannot be pleaded by any one of the contracting parties, their heirs and assigns, (*ayans cause.*)

These provisions are the same with those which have occasioned so much discussion among the jurists of France. The strength of the argument on both sides, is no doubt given to us in the works of *Toullier* and *Merlin,* which have reached this state; and it is believed that an attentive perusal of them, will either leave men's minds in as much doubt and difficulty here, or lead to as great a diversity of opinion, as they have done in the country where this discussion has arisen.

It is contended by one class of the French jurists, that the words *ayans cause*, mean all

those, to whom the rights of a person have been transferred by a particular title, such as legacy, donation, sale, exchange, &c. Hence they conclude that the second purchaser or mortgagee, being the *ayant cause* of his vendor, cannot under the provision already cited, plead the want of registering of an act *sous seing privé.*

Those who maintain the opposite doctrine, insist that the second purchaser is a third party, (*tiers*) and that he is enabled to allege the want of registering of the act under private signature.

It would be of little utility, if it were practicable, to bring within the compass of a judicial opinion, the various arguments and authorities on which the advocates of the respective doctrines just alluded to rely.   In the ardour with which the discussion is conducted, both parties will be found, perhaps, to have fallen into contradictions not easily reconciled ; and to have arrived at conclusions, which in their whole extent, it is difficult to accede to.

It is said, for example, that the mortgagee creditor, by convention, is the *ayant cause* of his debtor, but that he who makes a seizure in virtue of a judgment, is not; yet it is perhaps

East'n. District. difficult to perceive the difference on which
*April,* 1826. this distinction is founded; for the seizure is
MARTINEZ made under a contract formed with the deb-
*vs.*
LAYTON & co. tor, and the person to whom he obliges him-
self would appear to be as much *his ayant
cause,* as the creditor by mortgage. *Toullier,
Droit Civil Français, vol.* 8, *cap.* 6, *sec.* 1, *nos.*
247, 251, 252 ; *Pailliette, note* 7 *on the* 1328 *art.
Code Napoleon.*

But this inconsistency is still less striking
than that exhibited by the advocates of the
opposite doctrine. They contend that the
seizing creditor is the *ayant cause* of the debtor,
but they insist that as to any act made by him
under private signature, the former can plead
the want of registry. This argument would
appear to be completely at war with the ad-
mission, that the creditor is the *ayant cause* of
the vendor; for if he be, the law expressly
says, that the act *sous seing privé* is as bind-
ing on him, as the party who signs it. Indeed,
on a perusal of the whole of the discussion
on this side, it will be seen that its advocates
rely rather on the intention of the law maker,
and the inconveniences which would result
from adopting the principles of their adversa-
ries, than on the strict meaning of the terms

used. It is true, they endeavour to show that

even on technical grounds, their position is
tenable; but we apprehend, that in this point
of view, the strength of the case is with their
opponents. *Toullier, Droit Civil, vol.* 10, *p.* 613
to 670; *Merlin's Questions de Droit Verbo Tiers,
vol.* 6, 388.

Without entering, however, on a question
on which it is so easy to argue, and which
it is so difficult to decide; we think the case
before us may be settled under our law in
such a manner, as will most certainly give ef-
fect to the intention, of the legislature, and be
at the same time in consonance with the letter
of the law.

The object of laws for enregistering deeds
under private signature, are two fold. First,
to secure the purchaser by authentic act from
being defrauded by his vendor antidating in-
struments *sous seing privé.* Second, to pre-
vent the latter from obtaining a false credit
by titles recorded, which are notice to the
world of the property he owns; while at the
same time he has divested himself of that pro-
perty by instruments under private signature,
which are unknown to those who trust him, in
the confidence of his being the proprietor of

East'n. District. every thing, to which he has a title by authen-
*April,* 1826. tic act.

MARTINEZ
*vs.*
LAXTON & co. The first evil is effectually guarded against, by giving the act under private signature effect only when it is proved by circumstances *dehors* the instrument, that it was really made at the time it purports to be ; as in the cases put by *Pothier.* The second is prevented in the greater number of instances, by delivery and possession of the vendee following the act *sous seing privé.* For we believe that deeds recorded in a notary's office, are not in general as effectual notice to subsequent purchasers, as a peaceable, public, and notorious possession, by a third party. Our legislature has lately, and with great wisdom, we think, sanctioned this principle in their amendments to the *Civil Code.* By the 2242d and 2417th articles of that work, sales under private signature, have effect against third parties from the day they are recorded, or from the time the property is delivered. *Pothier, Traité des Ob.* 715; *ibid. de la Prescription,* 99 ; *Lous. Code,* 2242 *and* 2417.

We have no doubt such was always their intention, though the language by which they expressed it, is not so clear and free from am-

biguity, as that used in their late enactments.
We draw this conclusion from the article of
our *Code*, on which the plaintiff relies. One,
which is not found in the *Napoleon*, and
which enables us to disentangle the question
from the embarrassments that would attend
it, were the provisions of the French law
alone copied into ours.

By this article it is declared, that " the sale
of any immoveable or slave, made under pri-
vate signature, *shall have effect to the prejudice* of
persons not parties to it, only from the day
said sale was registered in the office of a
notary." *Civil Code*, 344, *art.* 3.

The prohibition of the law maker, then, is
against giving effect to private acts *to the pre-
judice* of third parties. What is the conclu-
sion to be drawn from such a prohibition,
when such acts *do not* prejudice third parties?
Why, surely to give them effect. We are
aware that this argument, *contrario sensu*, is
not always conclusive in the interpretation of
laws, though in general it is correct, and will
lead to truth. But after weighing this case
with the most anxious solicitude, and a care
and attention which are evidenced by the
length of time we have had it under consi-

East'n. District.
*April,* 1826.

MARTINEZ
*vs.*
LAYTON & CO.

deration, we are unable to come to any other conclusion. If the legislature had intended, that acts under private signature should have no effect against third parties, whether they were prejudiced by them or not: if they had conceived the interests of society required, that creditors by public act should have a right to set aside those by *sous seing privé,* as a matter of profit and speculation, not as a means of avoiding a loss, we are bound to think they would have said, they shall have *no effect* against them, instead of saying, they shall *not have effect to their prejudice.* We can understand such language in no other way, but as leaving them in force, when *they do not prejudice them.* Were we to take the interpretation of the plaintiff, and make it ours, we should be violating a rule which we are under the necessity of recurring to almost every week: namely, to give all the clauses of a law effect, and not to presume any part of it, made for no purpose.

It is true, that the previous article of the code, in relation to the registering of private acts, states generally, that they shall have no effect against third persons. But as the same provision is repeated in that just referred to,

with the limitation, that they shall not have effect to their prejudice, that limitation must necessarily refer to both, unless we should suppose the legislature intended at the same moment, and in the same work, to make contradictory provisions on the same subject. *Civil Code*, 306, *art.* 228.

Leaving the general question, and approaching the particular case before us, we are gratified to find the principles just established, enables us to do justice between the parties. The lot on which the plaintiff insists his mortgage attaches, was given to the vendors of the defendants, in payment of work done by them, on a house still standing, which makes a part of the estate surrendered by the insolvent to his creditors. In place of the thing alienated, they possess the thing received, and it augments the estate out of which they are to be paid. How, then, can it be said the judgment creditor is prejudiced by this act? if he be, we are unable to perceive it. Nor is he prejudiced by having been led into a false confidence, and giving credit, on the faith of this property, by seeing his debtor in possession of a title, by public act, at a time when it was secretly alienated. This cannot be

MARTINEZ
*vs.*
LAXTON & co.

pretended, for the debt was contracted before the sale by *sous seing privé*. Whether, therefore, the property was afterwards sold by act under private signature, or by one duly recorded, cannot make any difference in the plaintiff's rights, provided the agreement was *bona fide*; and the contrary has not been even alleged here. On the whole, we conclude by stating, that we are unable to see how giving effect to the act set up, does any injury or occasions any prejudice to the judgment creditor; unless it be a prejudice to him, that he cannot get his debt paid out of an honest and unsuspecting holder of the property, who gave a valuable consideration for it: but this we do not believe was the intention of the legislator.

The judgment of the parish court is erroneous in being one of nonsuit, when it should have been final for the defendants; but as the appellee has not desired it to be amended, it is therefore ordered, adjudged and decreed, that it be affirmed with costs.

*Seghers* for the plaintiff, *Carleton & Lockett* for the defendants.